any trust was created. *Bancroft* v. *Russell,* 157 Mass. 47. *Atkins* v. *Atkins,* 279 Mass. 1, 8. *Rock* v. *Rock,* 309 Mass. 44, 47, 48. *Harrington* v. *Donlin,* 312 Mass. 577, 583. There is a presumption that money transferred by a husband to his wife is a settlement, advancement or gift. *Tileston* v. *Tileston,* 234 Mass. 530. *Sigel* v. *Sigel,* 238 Mass. 587. *Scanzo* v. *Morano,* 284 Mass. 188. *Hogan* v. *Hogan,* 286 Mass. 524. *Moat* v. *Moat,* 301 Mass. 469. *Berry* v. *Kyes,* 304 Mass. 56. We see no distinction between delivering the funds directly to the wife and permitting her to withdraw sums from his accounts or to deposit the checks indorsed by him in her account. In the absence of proof of a trust, "it must be deemed that the money, property or conveyance was received with the intention that it be applied to the use and benefit of either or both at the discretion of the recipient." *English* v. *English,* 229 Mass. 11, 12–13. *Hogan* v. *Hogan,* 286 Mass. 524.

The judge was not required to adopt the plaintiff's testimony, especially where there was much evidence, although from interested parties, pointing in another direction. The credibility of the witnesses was for the trial judge, and he was not plainly wrong in refusing to find that there was any trust or that the wife had no right to use the funds as she did.

*Decrees affirmed.*

---

PEARL G. HANCHETT *vs.* FRED R. HILL.

Middlesex.     April 5, 1944. — September 12, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Will,* Waiver. *Conservator.*

A waiver of a will, filed by one of sound mind but still under a conservatorship which he had procured on his own petition on the ground of advanced age, was void under G. L. (Ter. Ed.) c. 201, §§ 20, 45.

PETITION, filed in the Probate Court for the county of Middlesex on May 20, 1943, seeking to have a waiver of a will filed by the respondent declared void.

The case was heard by *Monahan, J.* In this court the case was submitted on briefs. *W. W. Fox*, for the respondent. *Hawley*, for the petitioner.

DOLAN, J. This is an appeal from a decree entered in the Probate Court that a waiver of the will of Emma F. Hill filed by the respondent, her husband, was null and void and of no effect. The case was heard by the judge upon statements of counsel as to which there was no controversy, in effect upon agreed facts (*Dwyer v. Dwyer*, 239 Mass. 188, 190), which the judge set forth in a report of material facts. They may be summed up as follows: Emma F. Hill died on October 5, 1942, leaving a husband, the respondent. Her will was duly allowed on October 29, 1942, and the executor therein named, Warren W. Fox, was duly appointed and qualified. The testatrix devised and bequeathed all the income from her estate to the respondent so long as he should live, with the privilege, after his own property had been exhausted in his support, of using so much of the principal of the estate of the testatrix as he needs for his comfortable support and maintenance in sickness and in health, providing further that any portion of her estate not used was to go to her niece Pearl G. Hanchett, of Lowell, who is the petitioner. On November 5, 1942, the respondent, being of sound mind, filed in the probate registry a writing purporting to waive the provisions made for him in the will of his wife, the testatrix, and to claim such portion of her estate as he would have taken had she died intestate. Prior thereto by a decree of the Probate Court dated March 12, 1942, a conservator of the property of the respondent was appointed and qualified, and has served continuously since. That decree was entered upon the respondent's own petition on the ground of inability to properly care for his property by reason of advanced age only. (See G. L. (Ter. Ed.) c. 201, § 16. He was then about eighty-three years of age, and was confined to a hospital because he was seriously ill with pneumonia. He was without money to pay his expenses, and it became necessary for him to obtain funds from the sale or mortgage

of his real estate or from some other source. Being mentally competent, he petitioned for the appointment of the conservator and a decree was entered as above set forth. The judge found that the waiver of the will was null and void and of no force and effect, and entered the decree in question.

It is the contention of the petitioner, relying upon G. L. (Ter. Ed.) c. 201, § 45, that the waiver was void because it was not filed by the conservator of the respondent. Section 45 so far as here material provides as follows: "If property, rights or benefits given by will or by law depend upon the election, waiver or other act of a person incompetent by reason of insanity or minority to perform the same, his guardian may make such election or waiver or perform such act, provided that no waiver of the provisions of a will under this section shall be valid until approved by the probate court after notice to such persons, if any, as the court shall deem proper and a hearing thereon." Section 20 of c. 201 provides as follows: "A conservator shall have the same powers and duties, except as to the custody of the person, as a guardian of an insane person; and all laws relative to the jurisdiction of the probate court over the estate of a person under guardianship as an insane person, including the management, sale or mortgage of his property and the payment of his debts, shall be applicable to the estate of a person under conservatorship." The provision of § 45 that no waiver of a will by a guardian of a person incompetent by reason of insanity in behalf of such a person shall be valid unless approved by the Probate Court was enacted by St. 1924, c. 8. But in *Dolbeare v. Bowser*, 254 Mass. 57, with relation to a waiver of a will filed by a guardian of an insane person, it was held that a guardian, in deciding whether a waiver of the will should be filed by him in behalf of his ward, must exclude from consideration all thought of eventual interests and consider only the immediate interest of the ward, and that if the guardian does any act in his official capacity solely with a view to increasing the size of the estate which either he, members of his family or others will inherit from the ward upon his death, and does not

. act solely for the benefit of the ward, a court of equity may declare the waiver to be null and void (pages 61, 62).

The obvious reason for the amendment requiring the approval of the Probate Court of the waiver of a will, sought to be exercised by the guardian of a person incompetent by reason of insanity or minority to exercise the right of waiver in his own behalf, was to determine, at the time the approval of the waiver is sought, its validity, that is, whether it is for the benefit of the ward alone and for his best interests, and to avoid future litigation over the subject matter. See *Dolbeare* v. *Bowser*, 254 Mass. 57.

This brings us to the question whether by virtue of the provisions of § 20, hereinbefore set forth, § 45 applies in a case, such as the present, where the inability of a ward under conservatorship to care for his own property arises solely from advanced age and the ward is of sound mind.

General Laws (Ter. Ed.) c. 201, § 16, provides for the appointment of a conservator of the property of a person if by reason of advanced age or mental weakness he is unable to care therefor. Section 17 provides that where, as in the present case, the person for whose property the conservator is to be appointed is himself the petitioner or assents in writing to the petition no notice shall be required except to the United States veterans' bureau or its successor if such person is entitled to any benefit payable by the bureau.

When first enacted by St. 1898, c. 527, the statute authorizing the appointment of conservators related solely to persons incapacitated to care for their property by reason of advanced age, but by § 2 of that statute it was provided that "all provisions of law relating to the management, sale or mortgage of the property of insane persons shall apply to such conservators."[1] Statute 1915, c. 23, broadened these terms of St. 1898, c. 527 (see R. L. c. 145, § 41; *Jones* v. *Maguire*, 221 Mass. 315), and provided in § 1, "Conservators appointed under the provisions of section forty of chapter one hundred and forty-five of the Revised Laws

---

[1] The provision for the appointment of conservators of the property of persons unable to care therefor by reason of mental weakness was added by an amendment enacted by St. 1901, c. 125.

and acts in amendment thereof or in addition thereto shall have the powers, and perform the duties, except as to the custody of the person, of guardians of insane persons. All provisions of law relating to the jurisdiction of the probate court over the estates of persons under guardianship as insane persons shall be applicable to the estates of persons under conservatorship." The statute has continued substantially in that form to the present. See G. L. (Ter. Ed.) c. 201, § 20. It applies to cases where the conservatorship is based upon physical inability to care for one's property as well as to those based upon inability to do so because of mental weakness. It follows that the provisions of § 45 relative to the waiver of wills apply in the present case notwithstanding that the respondent was of sound mind when he filed the waiver in question, and that the conservator was appointed upon the respondent's petition. *Foss* v. *Twenty-Five Associates of Roxbury, Inc.* 239 Mass. 295, 297–298. If the conservatorship of the property of the respondent at the time he filed the waiver was not necessary because of improvement in his physical condition, he had a remedy by applying for the discharge of the conservator. G. L. (Ter. Ed.) c. 201, § 18, as amended by St. 1934, c. 204, § 2. No such action having been taken by him, the only valid method by which a waiver of the will in question could have been executed was that required to be pursued by § 45. No proceedings were taken thereunder.

*Decree affirmed.*

EVERETT P. TURNER & another, executors, *vs.* JAMES H. MORSON, administrator.

Middlesex. April 5, 1944. — September 12, 1944.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Trust,* Sale of real estate, Occupancy of real estate, Upkeep of real estate, Consent of beneficiary. *Negligence.* Trustee. *Probate Court,* Report of material facts, Appeal.

A "report of material facts," filed by a judge of probate as the foundation for a decree after he had heard twelve accounts of an executor upon the report of an auditor who had heard eight of them and "much" evidence, "some being a repetition of that heard by the auditor," was intended to be a complete statement of material facts and the equivalent of a report under G. L. (Ter. Ed.) c. 215, § 11, although it did not appear to have been filed in compliance therewith.

Upon a report of material facts by a judge of probate, without a report of the evidence, facts reported, except those appearing as mere inferences from subsidiary facts stated, must be taken to be true unless inconsistent with other facts found or with the pleadings.

Power given to executors, to whom was devised real estate, "in trust to sell," to postpone the sale thereof "so long as they may think proper," must be exercised with that soundness of judgment which follows from a due appreciation of trust responsibility.

Upon subsidiary facts found respecting the nature of certain land in Arlington with an outmoded house and outbuildings in a state of disrepair thereon, and the condition of the real estate market during the years 1931–1943, a conclusion was warranted that executors, to whom the property was devised "in trust to sell" with power to postpone the sale thereof "so long as they may think proper," were not negligent in failing to sell during that period.

Executors, with power to sell real estate which was devised to them "in trust" and included land and a dwelling house and outbuildings and which, after the loss of a tenant in 1934, had been occupied for nine years by one of them without paying rent, were properly found not chargeable for such use and occupation where it appeared that the dwelling house was outmoded and in a state of disrepair, that no tenant could have been found who would have paid rent, that, if the executor had not occupied the house, it would have deteriorated rapidly, and that his occupation was a benefit to the estate.

Consent by a beneficiary under a will, while living, to certain expenditures by the executor in maintenance and repair of real estate devised to the executor "in trust to sell" precluded the administrator of the beneficiary's estate from successfully contending that the executor should have been charged with such expenditures instead of credited.